**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

ROBERT JAMES CROMER,

    Petitioner,

v.                                            Case No. 06-CV-12383-DT

CARMEN PALMER,

    Respondent.
_____/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS
AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY**

Petitioner Robert James Cromer, a state inmate currently incarcerated at the Bellamy Creek Correctional Facility in Ionia, Michigan, has filed a *pro se* petition for writ of habeas corpus challenging his sentencing. Shortly after Respondent filed its answer to Petitioner's request for habeas relief, Petitioner filed two pleadings asking that the court give him permission to withdraw his habeas petition and that he be permitted to exhaust two new issues in the state courts. For the reasons stated below, the court will: (1) deny Petitioner's request to withdraw his habeas petition; and (2) deny habeas relief on the claims properly before the court.

**I. BACKGROUND**

Petitioner's conviction arose out of events which occurred on July 28, 2003. Petitioner pleaded guilty to setting a household residence on fire by dousing the inside of the home with gasoline and igniting the accelerant. The house in which the fire was started was destroyed and the two homes adjacent to the residence were damaged. Petitioner was initially charged with arson of a dwelling house, arson of insured property

and as being an habitual offender. On December 4, 2003, Petitioner pleaded guilty to arson of a dwelling house in exchange for the dismissal of the arson of insured property charge and the habitual offender supplement. Initially, as part of a plea agreement, Petitioner was sentenced to seven and a half years to twenty years. He was subsequently re-sentenced to six years and eight months to twenty years.

Petitioner appealed his conviction by filing a delayed application for leave to appeal with the Michigan Court of Appeals. However, he later filed a motion to withdraw the appeal; and his motion was granted. *People v. Cromer,* No. 264289, slip op. (Mich. Ct. App. Aug. 25, 2005). Petitioner did not seek an appeal to the Michigan Supreme Court relative to this appellate filing. Rather, Petitioner filed another delayed application for leave to appeal with the Michigan Court of Appeals raising two issues: (1) whether Petitioner's sentence was proportionate and (2) whether Petitioner's sentence was based upon findings of fact unsupported by a jury verdict or Petitioner's waiver of a right to a jury trial when the finding increased the severity of the sentence. On October 18, 2005, the Michigan Court of Appeals denied Petitioner's delayed application for leave to appeal for lack of merit. *People v. Cromer*, No. 264840, slip op. (Mich. Ct. App. Oct. 18, 2005). Petitioner filed an application for leave to appeal with the Michigan Supreme Court. The Court denied Petitioner's application, which raised the same issues that were presented before the Court of Appeals. *People v. Cromer,* 711 N.W.2d 60 (Table) (Mich. 2006). On May 26, 2006, Petitioner filed the instant application for writ of habeas corpus, raising the following two issues: (1) whether Petitioner's sentence is proportionate; and (2) whether Petitioner's sentence was based upon findings of fact

unsupported by a jury verdict or Petitioner's waiver of a right to a jury trial when the finding increased the severity of the sentence.

## II. STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs this court's habeas corpus review of state court decisions, and states in pertinent part:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the State court proceedings.

28 U.S.C. § 2254(d); *Harpster v. State of Ohio*, 128 F.3d 322, 326 (6th Cir. 1997).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). An "unreasonable application" occurs when the state court identifies the correct legal principle from a Supreme Court's decision but unreasonably applies that principle to the facts of the prisoner's case. *Id.* A federal habeas court may not find a state adjudication to be unreasonable "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411.

3

## III.  DISCUSSION

### A.  Proportionality

Petitioner asserts that the term of imprisonment he received at his re-sentencing was disproportionate, despite the fact that it fell within the sentencing guidelines, because of the following: (1) Petitioner acknowledged the seriousness of his offense and that his actions put fire fighters in danger; (2) Petitioner was eighteen years of age at the time the offense was committed; (3) Petitioner was intoxicated when he set the home on fire; (4) Petitioner exhibited a positive attitude and good behavior during the time he had already served in prison; and (5) Petitioner acknowledged that he has learned his lesson as a result of the entire incident.  The court declines to review this issue on the merits for two reasons.

First, Petitioner bases his argument on a Michigan Supreme Court decision, which held that a sentence constitutes an abuse of discretion if it  "violates the principle of proportionality, which requires sentences imposed by the trial court to be proportionate to the seriousness of the circumstances surrounding the offense and the offender."  *People v. Milbourn,* 461 N.W.2d 1, 2-3 (Mich. 1990).  The Eighth Amendment does not require strict proportionality between the crime and sentence.  *Harmelin v. Michigan,* 501 U.S. 957, 965 (1991).  Therefore, there is no federal constitutional right to individualized sentencing.  *See United States v. Thomas*, 49 F.3d 253, 261 (6th Cir. 1995).

Second, the alleged violation of state law as announced in *Milbourn* is not a cognizable claim on habeas review.  *Austin v. Jackson*, 231 F.3d 298, 300 (6th Cir. 2000) (citing *Pulley v. Harris*, 465 U.S. 37, 41 (1984); *Atkins v. Overton*, 843 F. Supp.

4

258, 260 (E.D. Mich. 1994). It is well-established that habeas relief does not lie for perceived errors of state law. *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). State courts are the final arbiters of state law and the federal courts will not intervene in such matters. *See Oviedo v. Jago*, 809 F.2d 326, 328 (6th Cir. 1987). Accordingly, Petitioner has failed to state a claim upon which habeas relief may be granted as to this issue.

## B. *Blakely* Claim

Petitioner next raises a claim under *Blakely v. Washington,* 542 U.S. 296 (2004), arguing that he

> was assessed 10 points for OV-9 and, 5 points for OV-12. A score of 10 points for OV-9 necessitates that there were 2-9 victims. In order to be assessed 5 points for OV-12, one contemporaneous felonious act involving a crime must have been committed. There was no jury determination beyond a reasonable doubt of any facts that would substantiate these scores.
>
> But for the *Blakely* error in scoring these offense variables, Mr. Cromer's minimum guidelines would have been 36-60 months. Even a minimal amount of additional prison time constitutes prejudice.

(Pet'r's App. for Leave to Appeal at 5-6, Ex. to Habeas Pet.) The court does not find that Petitioner's argument for habeas relief is warranted under *Blakely* for two reasons.

First, a state prisoner is entitled to habeas relief only on the ground that he or she is "in custody in violation of the Constitution or laws or treaties of the United States," and not on the ground that a trial judge allegedly incorrectly scored the Offense Variables of the Michigan Sentencing Guidelines. 28 U.S.C. §2254(a). Unless Petitioner can show that the imposed sentence exceeded the statutory limits or is wholly unauthorized by law, *Townsend v. Burke,* 334 U.S. 736, 741 (1948), habeas relief is not warranted.

5

Because Petitioner's sentence was within the statutory limit for arson of a dwelling, his claim is not cognizable on federal habeas corpus review.

Second, the court does not find Petitioner's reliance upon *Blakely* to be persuasive. In *Blakely*, the Supreme Court held that any fact that exposes a defendant to a greater potential sentence must be found by a jury, not a judge and established beyond a reasonable doubt. *Blakely,* 542 U.S. at 303-04. The majority in *Blakely* indicated that this rule applies only to determinate sentencing schemes. *Id.* at 308-09. Michigan has an indeterminate sentencing scheme in which the defendant is given a sentence based on sentencing guidelines and the maximum sentence is set by law, not by the trial judge. *People v. Drohan,* 715 N.W.2d 778, 790 (Mich. 2006). "[M]ichigan's sentencing guidelines, unlike the Washington guidelines at issue in *Blakely*, create a range within which the trial court must set the minimum sentence." *Id.* at 161.

Under Michigan law, only the minimum sentence must presumptively be set within the appropriate sentencing guidelines range, *People v. Babcock,* 666 N.W.2d 231, 237 n.7 (Mich. 2003), and although the trial judge sets the minimum sentence, it can never exceed the maximum sentence, *People v. Claypool*, 684 N.W.2d 278, 286 n.14 (Mich. 2004). The maximum is, in every case, the statutory maximum authorized by law. *Id.* *Blakely* is inapplicable here because *Blakely* is concerned only with the maximum penalty that is authorized by a jury's findings or a defendant's plea. Therefore, Petitioner's conviction contained all of the factual findings necessary to impose the statutory maximum on that charge. *Drohan,* 715 N.W.2d at 790.

6

Also, because *Blakely* does not apply to indeterminate sentencing schemes like the one used in Michigan, the trial court's calculation of Petitioner's sentencing guideline range did not violate Petitioners Sixth Amendment right to a jury trial. Consequently, Petitioner is not entitled to habeas relief on the ground that his sentence violated *Blakely.*

### C. Unexhausted Claims

### 1. Procedural Default

Petitioner has submitted two additional claims for habeas review that were not raised in the trial or appellate state courts: (1) the involuntariness of his guilty plea; and (2) ineffective assistance of counsel. Federal courts may not grant a habeas corpus petition unless "the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. §2254(b)(1)(A). Although normally the failure to exhaust state court remedies requires dismissal of the entire petition, *Lyons v Stovall,* 188 F.3d 327, 333 (6th Cir. 1999) (citing *Rose v. Lundy,* 455 U.S. 509, 522 (1982)), the failure to exhaust state remedies is not an absolute bar to adjudication where, as here, the federal claims lack merit and requiring additional proceedings in state court would waste time and judicial resources. *Id.* at 333; *see also* 28 U.S.C. § 2254(b)(2). The court will therefore excuse the exhaustion requirement in the interest of judicial economy and proceed to address the merits of the Petitioner's unexhausted claims.

### 2. Involuntary Plea Claim

In his involuntary plea claim, Petitioner argues that his plea was involuntary, he did not intentionally, willfully or maliciously burn the dwelling house at issue and he did

7

not know that his accomplice, Ed Pudlik, was planning to burn down the house in question. However, Petitioner's testimony at his plea hearing indicates a contrary version of events:

| | |
|---|---|
| The Court: | The plea will be to the 20-year arson without the prior habitual, so 20 years maximum penalty, sentence within the guidelines . . . Mr. Cromer, do you understand [w]hat's going on here, sir. |
| The Defendant: | Yes. |

* * *

| | |
|---|---|
| The Court: | Sir, aside from the plea agreement here that was placed on this record this afternoon, has anyone promised you anything in order to induce you to plead guilty, other than this plea agreement? |
| The Defendant: | No. |
| The Court: | Has anyone threatened you in any way in order to force you to plead guilty, sir? |
| The Defendant: | No. |

* * *

| | |
|---|---|
| The Court: | Let me ask counsel and I'll ask Probation too, if any of you are aware of any promises, threats or inducements, other than those already disclosed on the record, to force Mr. Cromer to plead guilty. |
| Ms. Lehmann: | No, Your Honor. |
| The Court: | Prosecutor? |
| Ms. Hoffman: | No, Your Honor. |
| Mr. White: | No, Judge. |
| The Court: | Sir, who made the final choice for you to plead guilty . . . |

| The Defendant: | I did. |

* * *

| The Court: | I've asked you before, but I'll ask again – we just had that in a matter so maybe it's important – who made the final choice for you to plead guilty? |
| The Defendant: | I did. |
| The Court: | And how do you plead? |
| The Defendant: | Guilty. |

* * *

| The Court: | All right. It alleges that certain things happened. First, sir, in relation to Count I, it charges that you did willfully or maliciously burn a dwelling house or the contents thereof located at 413 Conant Avenue, Monroe, Michigan. Did that happen, sir, is that what you're pleading to? |
| The Defendant: | Yes. |

* * *

| The Court: | Did you do something willfully or maliciously to burn it. |
| The Defendant: | Participated with Ed Pudlik in burning down the house. |

* * *

| The Defendant: | Pudlik had poured the gas and I had lit the match. |

* * *

| The Court: | Did you know what would happen – where was this – it was gasoline, was it, some flammable substance? |
| The Defendant: | Yes. |

* * *

| | |
|---|---|
| The Court: | And did you know what he intended would happen by pouring gas all over the house? |
| The Defendant: | Yes. |
| The Court: | What? |
| The Defendant: | The house would burn down. |

* * *

| | |
|---|---|
| The Court: | Did you do this willfully or maliciously? |
| The Defendant: | Willfully. |
| The Court: | Willfully. And did you have any question in your mind after he poured the gas and you lit the match what was going to happen? |
| The Defendant: | No. |

(12/4/03 Hearing Tr. at 9, 16-23.)

A plea of guilty must be knowingly and voluntarily made. *United States v. Broce,* 488 U.S. 563 (1989). The defendant must be aware of the "relevant circumstances and likely consequences" of his plea. *Hart v. Marion, Corr. Inst.,* 927 F.2d 256, 257 (6th Cir. 1991). The defendant must also be aware of the maximum sentence that can be imposed for the crime for which he is pleading guilty. *King v. Dutton,* 17 F.3d 151, 154 (6th Cir. 1994). In the present case, the above stated testimony clearly indicates that: (1) Petitioner's plea was voluntary; (2) the elements of the crime were met; (3) Petitioner was fully aware of his actions and the consequences; and (4) Petitioner was aware of the maximum penalties for the charged offense. Moreover, the trial court advised Petitioner of his rights under the plea agreement and the consequences of accepting a plea. (12/4/03 Hearing Tr. at 14-16.)

A voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked. *Maybry v. Johnson,* 467 U.S. 504 (1984). As the Supreme Court has noted, "[t]o allow indiscriminate hearings in federal post-conviction proceedings, whether for federal prisoners under 28 U.S.C. §2255 or state prisoners under 28 U.S.C. §§2241-2254, would eliminate the chief virtues of the plea system – speed, economy, and finality." *Blackledge v. Allison,* 431 U.S. 63 (1977). This claim therefore, can be rejected for lack of merit.

### 3. Ineffective Assistance of Counsel

To show a violation of the right to effective assistance of counsel, a petitioner must establish first that his attorney's performance was deficient "in that it fell below an objective standard of reasonableness." *Towns v. Smith,* 395 F.3d 251, 258 (6th Cir. 2005) (quoting *Strickland v. Washington,* 466 U.S. 668, 687 (1984)). An attorney's performance is deficient if "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland,* 466 U.S. at 687. "Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689.

The petitioner also must demonstrate prejudice, that is, show that counsel's deficient performance may have altered the results of the trial. *Id.* An attorney's deficient performance is prejudicial if "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687. The defendant must show a "reasonable probability that, but for counsel's unprofessional errors, the result of

the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

Petitioner claims that his trial "counsel entirely fail[ed] to subject the prosecution's case to meaningful adversarial testing," *United States v. Cronic*, 466 U.S. 648, 659 (1984), when counsel advised Petitioner to plead guilty to arson of a dwelling house in exchange for the dismissal of the arson of insured property charge and the habitual offender supplement. Petitioner maintains that (1) he was actually innocent of the arson of insured property charge because he did not know that the house was insured or that his cohorts intended to defraud the insurer, (2) that his attorney knew or should have known that Petitioner would not be convicted of this count and (3) that his plea agreement was therefore not based on sound trial strategy. Furthermore, Petitioner argues that if his attorney had requested additional discovery, he would have known that prosecution was unable to make its case for its arson of insured property charge. At its core, Petitioner's claim rests on his belief that his plea bargain was less of a bargain than he initially anticipated, and that Petitioner was unable to appreciate this fact because his attorney failed to fully inform him of all the relevant facts.

When a petitioner is convicted as a result of a plea, habeas review is limited to whether the plea was made voluntarily, intelligently, and knowingly. *See Broce*, 488 U.S. at 563; *Boykin v. Alabama*, 395 U.S. 238 (1969). A plea is voluntary if it is not induced by threats or misrepresentations and the defendant is made aware of the direct consequences of the plea. *See Brady v. United States*, 397 U.S. 742, 755 (1970). The voluntariness of a plea "can be determined only by considering all of the relevant circumstances surrounding it." *Id.* at 749. The plea is intelligent and knowing where

12

there is nothing to indicate that the defendant is incompetent or otherwise not in control of his mental faculties, is aware of the nature of the charges, and is advised by competent counsel. *Id.* at 756. The plea must be made "with sufficient awareness of the relevant circumstances and likely consequences." *Id.* at 748. However,

> [t]he rule that a plea must be intelligently made to be valid does not require that a plea be vulnerable to later attack if the defendant did not correctly assess every relevant factor entering into his decision. A defendant is not entitled to withdraw his plea merely because he discovers long after the plea has been accepted that his calculus misapprehended the quality of the State's case or the likely penalties attached to alternative courses of action.

*Id.* at 757.

Petitioner's plea was knowing, intelligent and voluntary because Petitioner does not allege that he was threatened or mislead. Moreover, the information he claims his attorney should have discovered – that Petitioner never intended to commit insurance fraud – was within Petitioner's knowledge throughout the plea bargaining process. Petitioner cannot now complain simply because, upon reflection, he believes he should have obtained a better bargain. Under these facts, the court cannot say that "counsel entirely fail[ed] to subject the prosecution's case to meaningful adversarial testing." *Cronic*, 466 U.S. at 659. Furthermore, Petitioner has not shown prejudice because he freely admits that he is guilty of count one, the charge to which he pleaded guilty, and for which he is serving time. (12/4/03 Hearing Tr. at 9, 16-23; Pet'r's Mot. Withdraw at 13-18.) Accordingly, habeas relief is not warranted on this claim.

### D. Certificate of Appealability

A district court, in its discretion, may decide whether to issue a certificate of appealability ("COA") at the time the court rules on a petition for a writ of habeas corpus

13

or may wait until a notice of appeal is filed to make such a determination. *Castro v. United States*, 310 F.3d 900, 903 (6th Cir. 2002). In deciding to deny the habeas petition, the court has, of course, studied the case record and the relevant law, and concludes that it is presently in the best position to decide whether to issue a COA. *See id.* at 901, (*quoting Lyons v. Ohio Adult Parole Auth.*, 105 F.3d 1063, 1072 (6th Cir.1997), overruled in part on other grounds by *Lindh v. Murphy*, 521 U.S. 320 (1997)) ("[Because] 'a district judge who has just denied a habeas petition . . . will have an intimate knowledge of both the record and the relevant law,'" the district judge is, at that point, often best able to determine whether to issue the COA.).

A certificate of appealability may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A petitioner must "sho[w] that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Reasonable jurists would not debate the court's assessment of Petitioner's claims because clearly established federal law, as determined by the Supreme Court, demonstrates that his claims are legally deficient.

## IV. CONCLUSION

IT IS ORDERED that the "Petition for Writ of Habeas Corpus" [Dkt. # 1] is DENIED.

IT IS FURTHER ORDERED that the court DECLINES to issue a certificate of appealability.

                                        s/Robert H. Cleland
                                        ROBERT H. CLELAND
                                        UNITED STATES DISTRICT JUDGE

Dated: December 20, 2007

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, December 20, 2007, by electronic and/or ordinary mail.

                                        s/Lisa G. Wagner
                                        Case Manager and Deputy Clerk
                                        (313) 234-5522